UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In Re:                                              Bankruptcy No. 68-00039

Great Plains Royalty Corporation,                   Chapter 7

                    Debtor.
_____/
Great Plains Royalty Corporation,

                    Plaintiff,

         vs.                                        Adversary No. 13-07018

Earl Schwartz Company and
Basin Minerals, LLC,

                    Defendants.
_____/
Earl Schwartz Company and
Basin Minerals, LLC,

                    Counter-Claimants,

         vs.

Great Plains Royalty Corporation,

                    Counter-Defendant.
_____/

# MEMORANDUM AND ORDER

## I.    INTRODUCTION

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiff

Great Plains Royalty Corporation (Great Plains) on August 28, 2014.  Defendants, Earl

Schwartz Company (ESCO) and Basin Minerals, LLC (Basin) filed a response opposing

the motion.  For the reasons below, the motion is granted in part and denied in part.

## II.    BACKGROUND

Great Plains was originally incorporated under North Dakota law in 1958.  Case No. 68-39, Doc. 35-1.  After liquidating, the corporation was dissolved in the early 1970s.  Great Plains was later reinstated as a corporation by the North Dakota Secretary of State.

This adversary proceeding stems from events which began on April 12, 1968, when Great Plains' creditors filed an involuntary petition under Chapter 11 of the Bankruptcy Code.  Great Plains was originally permitted to act as a debtor in possession, but Myron Atkinson was appointed Trustee on September 27, 1968.  On October 5, 1968, the Trustee filed a petition for an order to show cause why Great Plains' petition under Chapter 11 should not be withdrawn and abandoned and Great Plains be "adjudicated a bankrupt."  Case No. 68-39, Doc. 35-2.  In the petition, the Trustee asserted that Great Plains' assets were insufficient to meet its liabilities and that it would be in the best interest of the creditors to promptly liquidate the estate.  Id.  The Court held a show cause hearing on October 25, 1968.  Following the hearing, the Referee in Bankruptcy executed an Adjudication, ruling that Great Plains is a bankrupt.  Case No. 68-39, Doc. 35-4.  On the same day, the case was converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.  Case No. 68-39, Doc. 35-3 to -5.

On December 5, 1968, the Trustee filed a petition seeking authorization to sell Debtor's assets "insofar as they are known."  Id. Doc. 32.  The parties agree that the entire scope of the assets held by Debtor at the time was not clear.  Trustee Atkinson declined to conduct a title search at the time, relying instead on Debtor's records because of the cost involved in completing a thorough search.  On January 3, 1969, the

Referee in Bankruptcy entered an order authorizing the Trustee to sell assets held by Great Plains' bankruptcy estate.  Case No. 68-39, Doc. 12.  The Trustee arranged for the sale to take place at the Plainsman Hotel in Williston, North Dakota, on June 5, 1969.  Case No. 68-39, Doc. 15.  The Trustee published a notice of the sale in newspapers in Williston and Bismarck, North Dakota, and in Billings and Great Falls, Montana.  Id.

One of the issues raised by Great Plains in its motion is whether the Trustee offered all of the estate's assets for sale in June 1969.  The Trustee testified in his deposition that he "absolutely [did] not" make any representations at the auction that the participants would be bidding on all the assets of Great Plains and that he "had concerns all along . . . that there would be properties we had not identified."  Case No. 13-7018, Doc. 29-2, p. 21, ln. 8-13.  In addition, the Trustee testified that he "called for a bid on all of the property that was listed for sale."  Id. at 16, ln. 18-19.  He also testified that "[t]here was no representation of anything other than the described properties on the advertised notice."  Id. at 17, ln. 19-21.  Consistent with the Trustee's testimony, Robert Mau, the manager of ESCO and Basin, testified in his deposition that he was aware ten to twenty years ago that there were properties belonging to Great Plains that were not conveyed to ESCO during the bankruptcy administration.  See Case No. 13-7018, Doc. 29-1, p. 18, ln. 21-25 to p. 19, ln. 1-7.  At the auction, the Trustee ultimately accepted a bid from Earl Schwartz for the advertised assets for the price of $225,000. Id.  An Order confirming the sale was signed by the Referee in Bankruptcy on June 19, 1969.  Case No. 68-39, Doc. 16.

Following the auction, the Trustee began transferring the purchased assets to Schwartz or his assignees.[1]  ESCO and Basin are the successors of Schwartz's interests in the assets purchased from Great Plains' bankruptcy estate in 1969 (the "Disputed Assets").  ESCO and Basin identified five interests that were the subject of the Trustee's conveyances.  They claim the conveyances were ambiguous, resulting in disputed titles.  The Disputed Assets are:

The 7/160 Interest—An undivided 7/160 interest in the oil, gas, and other minerals in and under the NW/4 of Section 8, Township 159, North, Range 94 West, Burke County, North Dakota. Case No. 68-39, Doc. 35-6;

The 31% Interest—An undivided 31% interest in the oil, gas, and other minerals in and under the S/2 and S/2NE/4 of Section 34, Township 164 North, Range 92 West, Burke County, North Dakota;[2]

The Fossum Lease—An oil and gas lease between Gussty Fossum as lessor and Carter Oil Company as lessee for the lessor's interest in the oil and gas in and under the N/2 and SW/4 Section 29, the NE/4 of Section 30, and the S/2 Section 20, Township 161 North, Range 81 West, Bottineau County, North Dakota. Case No. 68-39, Doc. 35-7;

The 55/240 Interest—An undivided 55/240 interest in the oil, gas, and other minerals in and under the S/2NW/4 and SW/4 of Section 15, Township 163

---

[1] The Order Confirming Sale of Assets, Case No. 68-39, Doc. 16, provides that Schwartz had entered into an agreement with Cardinal Petroleum Company of Billings, Montana and Sunbehm Gas, Inc. of Minot, North Dakota, which the Referee in Bankruptcy approved, allowing the Trustee to transfer some of the purchased assets directly to these assignees.

[2] In their brief in support of their motion to reopen the bankruptcy proceeding, Case No. 68-39, Doc. 35, ESCO and Basin made no mention of the 31% Interest and attached as exhibits the original leases for all of the Disputed Assets except the 31% Interest. ESCO and Basin first mentioned the 31% Interest in their Counterclaim.  The legal description in this Order is taken from the Counterclaim.  Great Plains did not take issue with the legal description, and both parties attached to various filings an Assignment of Overriding Royalties which refers to the same legal description that is provided here. See Case No. 68-39, Doc. 35-14; Case No. 13-7018, Doc. 29-4, p. 18.

4

North, Range 95 West, Divide County, North Dakota.[3]  Case No. 68-39, Doc. 35-8, -9, -10;

The 60/320 Interest—An undivided 60/320 interest in the oil, gas, and other minerals in and under the NW/4 of Section 27 and the SW/4 of Section 22, Township 163 North, Range 95 West, Divide County, North Dakota.  Case No. 68-39, Doc. 35-11.

On December 26, 1969, the Trustee conveyed the 7/160 Interest and the 31% Interest to ESCO through an Assignment of Overriding Royalties.  Case No. 68-39, Doc. 35-14.  The Assignment of Overriding Royalties refers to an attached exhibit that identifies the specific interests conveyed.  See id.  The exhibit, titled "Overriding Royalties," includes a description referring to a "Parcel Number" and a legal description for each interest.  See id.  In addition, before each property description, a name appears—the 7/160 interest references the name "North Tioga Field (Madison Unit)" and the 31% Interest references the name "Portal Field."  Id.  Although titled "Overriding Royalty," the exhibit refers to the interest as a "Royalty."  Id.

In their brief opposing the motion for partial summary judgment, ESCO and Basin suggest that the "Parcel Number" is listed as an attempt to incorporate inventory.  ESCO and Basin also assert that the specific names on the exhibit refer to individual wells and argue that this exhibit is ambiguous because it is unclear whether the Trustee intended to assign an interest in a single well or an interest in the entire property described.  Additionally, ESCO and Basin assert that because the body of the exhibit refers to a "royalty" rather than an "overriding royalty," it is not clear what interest was

---

[3] This interest was actually conveyed to Great Plains through three separate mineral deeds, the first conveying 10 mineral acres, the second conveying 15 mineral acres, and the third conveying 30 mineral acres.

actually conveyed.  ESCO and Basin also maintain that the use of the term "overriding royalty," raises "significant questions about the intent of the assignment."

As an additional example of ambiguity, ESCO and Basin direct the Court to the Fossum Lease.  The Trustee initially assigned the Fossum Lease to ESCO on December 26, 1969, through an Assignment of Oil and Gas Leases.  Case No. 68-39, Doc. 35-15.  This document references an attached exhibit which refers to "Leaseholds" and which also contains legal descriptions accompanied by names associated with each legal description.  Almost one year later, on November 7, 1970, the Trustee executed a Correction Assignment of Oil and Gas Leases containing an attached exhibit identical to the exhibit to the original Assignment of Oil and Gas Leases except for the addition of a new section with the heading "Leases covered."  Case No. 68-39, Doc. 35-16.  Under this heading, two leases are identified, one of which is the Fossum Lease. Id.  The legal description of the Fossum Lease described in the "Leaseholds" section differs from the legal description of the Fossum Lease described in the "Leases covered" section.  Id.  As a result, ESCO and Basin claim the Fossum Lease assignment is ambiguous.

ESCO and Basin point to the 55/240 Interest and the 60/320 Interest the Trustee conveyed to ESCO through an Assignment of Mineral Interests and argue that this assignment is ambiguous as well.  Case No. 68-39, Doc. 35-17.  Similar to the other conveyances, this document refers to an attached exhibit that lists a legal description, the size of the interest and recording information.  See id.  The Assignment of Mineral Interests provides that the Trustee is conveying the "entire interest of the bankrupt" to ESCO, but the attached exhibit (which estimates the sizes of the interests) allegedly

6

refers to incorrect information.  See id.  Specifically, ESCO and Basin claim that the

exhibit includes the wrong denominator[4] when referring to the size of the interest

conveyed.    See id.  In support of this argument, they claim that the denominators used

to describe these interests were not consistent with the way the denominators were

calculated for many other properties listed in the same exhibit.  Accordingly, ESCO and

Basin argue that the assignment is ambiguous and the reference to the fractional

interest on the exhibit was likely a result of an error.

On April 30, 2013, ESCO and Basin filed a motion to reopen the bankruptcy

proceeding and appoint a Trustee for the purpose of allowing the Trustee to clarify

alleged "ambiguities in assignments and conveyances executed by the initial trustee."

Case No. 68-39, Doc. 34.  The Court entered an order granting the motion to reopen the

bankruptcy case on May 3, 2013.  Case No. 68-39, Doc. 36.

Great Plains then filed a Complaint initiating this adversary proceeding on

October 25, 2013.  In the Complaint, Great Plains seeks declaratory relief regarding the

legal status of the Disputed Assets.  Specifically, Great Plains requests a judgment

declaring that ESCO and Basin have no right, title, or interest in any property currently

owned by Great Plains or titled in its name.  ESCO and Basin filed an Answer and a

Counterclaim on December 20, 2013 in which they request that the Court enter a

judgment declaring that 100% of the Disputed Assets were sold and assigned by the

Trustee to Schwartz.  In the Counterclaim, ESCO and Basin also seek a declaration that

the Trustee intended to, and did in fact, sell and convey any and all of Great Plains'

---

[4] In their brief, ESCO and Basin suggest that the numerator is incorrect, but after
reviewing the relevant exhibits, it appears that ESCO and Basin were actually referring
to the denominator.

assets to Schwartz and that Great Plains has no interest in any property it owned prior to the commencement of the bankruptcy proceeding. Finally, ESCO and Basin request that the Court order the Trustee[5] to issue corrective assignments or other conveyances of the Disputed Assets.

On August 28, 2014, Great Plains filed a motion for partial summary judgment requesting the Court to "find and order that Defendants did not purchase all of the assets of Great Plains during the administration of its bankruptcy case and that as to the assets actually purchased, the instruments of conveyance issued by the duly appointed trustee are unambiguous and not subject to attack by parol evidence." Case No. 68-39, Doc. 28. ESCO and Basin filed a response to the motion.

## III.   LEGAL DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial responsibility of identifying pleadings, discovery, testimony and other evidence which it believes demonstrate "the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 324. The moving party satisfies this burden by showing "an absence of evidence to support the nonmoving party's case." Id. at 325. When the moving party has met its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

---

[5] On May 3, 2013, Gene Doeling was appointed as Chapter 7 Trustee in the underlying bankruptcy case. Case No. 68-39, Doc. 37.

8

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citing Fed. R. Civ. P. 56). The Court views the record in the light most favorable to the nonmoving party and must afford that party all reasonable inferences. Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

### B. Whether Schwartz Purchased all Assets Owned by Great Plains Prior to Bankruptcy

Great Plains requests summary judgment on the issue of whether Schwartz purchased all assets owned by Great Plains during the administration of the bankruptcy proceeding as alleged in ESCO and Basin's Counterclaim. ESCO and Basin concede in their brief opposing the motion for partial summary judgment that "some assets were apparently never found or sold by the Trustee. As a result, they presumably remain part of the bankruptcy estate and neither ESCO nor Basin claims any interest in them." Case No. 13-7018, Doc. 30, p. 1. In their brief, Defendants also state that "ESCO and Basin now concede they cannot demonstrate that 'all' assets once owned by the bankrupt corporation were assigned to ESCO." Id. at 9. In support of its argument, Great Plains cites the Trustee Atkinson's deposition during which he testified that he never made representations that he was selling all assets owned by Great Plains. In addition, Great Plains cites the testimony of Robert Mau, who stated that he was aware, ten to twenty years ago, that there were other assets owned by Great Plains and not purchased by Schwartz during the administration of the bankruptcy case. This testimony, along with ESCO and Basin's admission that Schwartz did not purchase all

of Great Plains assets, satisfies the Court that there is no genuine dispute as to any
material fact on this issue.  Great Plains' request for judgment on this issue is granted.

### C. Whether Schwartz Purchased 100% of Great Plains' Interest in the Disputed Assets

Great Plains also seeks summary judgment on the issue of whether the
instruments of conveyance relating to the Disputed Assets are "unambiguous and thus
not subject to attack by parol evidence."  Case 13-7018, Doc 28.  Great Plains
affirmatively alleged that that the instruments of conveyance at issue are unambiguous
and may not be "altered or construed by extraneous evidence including parol evidence,"
but did not assert a cause of action or request relief based on this allegation.  Case 13-
7018, Doc. 1.  Therefore, the Court will treat Great Plains' motion as a motion for
summary judgment on ESCO and Basin's Counterclaim seeking a judgment
determining that the Trustee sold and assigned 100% of the Disputed Assets to
Schwartz and directing the Trustee to issue corrective assignments or other
conveyances of the Disputed Assets.

The North Dakota Supreme Court has explained the parol evidence rule as
follows:

> The parol evidence rule is a rule of substantive law and precludes use of
> evidence of prior oral negotiations and agreements to vary the terms expressed
> in a written contract.  See Citizens State Bank–Midwest v. Symington, 2010 ND
> 56, ¶ 19, 780 N.W.2d 676; Des Lacs Valley Land Corp. v. Herzig, 2001 ND 17, ¶
> 7, 621 N.W.2d 860.  The parol evidence rule is codified in N.D.C.C. § 9–06–07,
> which provides that "[t]he execution of a contract in writing, whether the law
> requires it to be written or not, supercedes all the oral negotiations or stipulations
> concerning its matter which preceded or accompanied the execution of the
> instrument."  A court may consider parol evidence when a written agreement is
> ambiguous, or when the written agreement does not reflect the parties' intent
> because of fraud, mistake, or accident.

Myaer v. Nodak Mut. Ins. Co., 2012 ND 21, ¶ 20, 812 N.W.2d 345, 353. "Whether a contract is ambiguous is a question of law." Bakken v. Duchscher, 2013 ND 33, ¶ 13, 827 N.W.2d 17, 21. Furthermore, "a contract is ambiguous when reasonable arguments can be made for different positions on its meaning." Id. (citing Bendish v. Castillo, 2012 ND 30, ¶ 16, 812 N.W.2d 398).

With regard to the instruments of conveyance for each of the Disputed Assets, Great Plains argues that "[t]here has been no allegation that the assignments are ambiguous in any fashion whatsoever, and a reading of assignments does not disclose any ambiguities." Case No. 13-7018, Doc. 29, p. 8. Great Plains offers no facts to support its argument that the assignments were unambiguous. In fact, the opposite is true. It is apparent from ESCO and Basin's Answer that they denied Great Plains' allegation that the conveyances are unambiguous and that they assert the conveyances are ambiguous in their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment. Case 13-7018, Doc. 5, 30. In addition, ESCO and Basin first alleged that the assignments were ambiguous in their motion to reopen the bankruptcy case and have consistently alleged the same throughout this adversary proceeding. Further, ESCO and Basin offered evidence and argument supporting their claim that the instruments of conveyance for each of the Disputed Assets are ambiguous. Specifically, ESCO and Basin met their burden of showing that reasonable arguments can be made for different interpretations of the conveyances. For example, with regard to the 7/160 Interest and the 31% Interest, it is arguably unclear whether the Trustee intended to transfer a royalty, an overriding royalty, an interest in an individual well or parcel, or any combination of these. As to the Fossum Lease, ESCO and Basin offered

evidence showing that the assignment contained two different legal descriptions, suggesting it is unclear exactly what the Trustee conveyed.  Finally, as to the 55/240 Interest and the 60/320 Interest, ESCO and Basin offered evidence showing that the denominators used in describing the fractional interests conveyed were inconsistent with the way the denominators were calculated for many other properties listed in the same attached exhibit and may be inaccurate.

Because the instruments of conveyance as to each of the Disputed Assets are arguably ambiguous, the Court finds that Great Plains, as the moving party, failed to meet its burden of demonstrating that it is entitled to judgment as a matter of law on this issue at this stage of the litigation.  Great Plains' motion for summary judgment on ESCO and Basin's Counterclaim requesting judgment be entered determining that 100% of the Disputed Assets were sold and assigned to Earl Schwarz and directing the Trustee to issue corrective assignments or other conveyances of the Disputed Assets is therefore denied.  The Court will receive evidence and hear argument on the alleged ambiguities and rule on the parol evidence issue at trial.

The Court has considered all other arguments and deems them to be without merit.

## IV.    CONCLUSION

For the reasons provided above, Plaintiff Great Plains' Motion for Summary Judgment on ESCO and Basin's Counterclaim alleging that Defendants purchased 100% of the assets owned by Great Plains at the time the bankruptcy proceeding was commenced is GRANTED.  This cause of action is dismissed.  Plaintiff Great Plains' Motion for Summary Judgment on ESCO and Basin's Counterclaim alleging that

Defendants purchased 100% of the Disputed Assets and requesting a remedy is DENIED.

Dated this 1st day of October, 2014.

Shon Hastings, Judge
United States Bankruptcy Court