UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In Re:                                                                Bankruptcy No. 68–00039

Great Plains Royalty Corporation,                      Chapter 7

       Debtor.
_____/

Great Plains Royalty Corporation,

       Plaintiff,

  vs.                                                                      Adversary No. 13–07018

Earl Schwartz Company and
Basin Minerals, LLC,

       Defendants.
_____/

Earl Schwartz Company and
Basin Minerals, LLC,

       Counter-Claimants,

  vs.

Great Plains Royalty Corporation,
       Counter-Defendant.
_____/

**MEMORANDUM AND ORDER**

**I.**    **INTRODUCTION**

      Before the Court is Defendants Earl Schwartz Corporation (ESCO) and Basin Minerals, LLC's Motion to Clarify and Amend Judgment filed on April 1, 2015. Doc. 52. Plaintiff Great Plains Royalty Corporation opposes the motion. For the reasons stated below, the motion is granted in part and denied in part.

1

## II.   BACKGROUND

The Court detailed the full history of this case and its findings of fact in its trial opinion dated March 18, 2015.  See Doc. 50.  In short, this adversary proceeding arises from events beginning on April 12, 1968, when Great Plains filed a petition for relief under Chapter 11 of the Bankruptcy Code.  The case was eventually converted to a Chapter 7 proceeding and Myron Atkinson was appointed as Trustee to liquidate the estate.  The Trustee declared Earl Schwartz the high bidder, allowing him to purchase certain assets of the Great Plains bankruptcy estate at an auction in Williston, North Dakota, held on June 5, 1969.  The Trustee transferred assets of the bankruptcy estate to ESCO, which later transferred those assets to Basin.  Some of these assets became the subject of a dispute between Great Plains and ESCO and Basin.

On October 25, 2013, Great Plains initiated an adversary proceeding by filing a Complaint seeking a declaration resolving the parties' dispute regarding the Trustee's conveyances to ESCO.  ESCO and Basin filed an Answer and a Counterclaim on December 20, 2013.  The parties identified five assets at issue (the "Disputed Assets").  Only two of the Disputed Assets are at issue in ESCO and Basin's motion:  the 7/160 Interest and the 31% Interest.

ESCO and Basin originally brought a counterclaim seeking reformation of the instruments of conveyance transferring these interests from the bankruptcy estate to ESCO.  ESCO and Basin argued that the Inventory, Notice of Bankruptcy Sale and Assignment described the 7/160 Interest and 31% Interest in slightly different ways, suggesting the Trustee and Schwartz made mistakes that required reformation.  Specifically, ESCO and Basin argued that the Trustee's Assignment, which purported to

2

transfer "overriding" royalty interests, was a mistake, and that the Trustee intended to transfer mineral interests. In the alternative, ESCO and Basin argued that the discrepancies created ambiguities requiring the Court's interpretation.

In its Memorandum and Order, the Court concluded that ESCO and Basin failed to meet their burden of proving the Trustee intended to transfer the net mineral acres as opposed to a royalty interest. The Court reasoned: "The references to the fractional interest, which required the Trustee to include the standard royalty rate in his calculation, together with the use of the term 'royalty' in the description or headings suggest the Trustee was aware that Great Plains owned a royalty interest and intended to transfer it." Doc. 50, at 35 and 38. The Court then concluded that the reference to an "overriding" royalty in the Trustee's Assignment of the 7/160 Interest and the 31% Interest was a mutual mistake. See Doc. 50, at 39. Based on the evidence presented at trial, the Court concluded:

> The Court concludes that the Assignment should have conveyed to ESCO a .005469 royalty interest in the Melvin E. Peterson 1 Well in the North Tioga Field Madison Unit in the northwest quarter of Section 8, Township 159 North, Range 94 West, in Burke County, North Dakota. In addition, the Assignment should have conveyed to ESCO a .03875 royalty interest in the Ruppert 1 Well in Portal Field in the south half and south half of the northeast quarter of Section 34, Township 164 North, Range 92 West, in Burke County, North Dakota. These conveyances shall be reformed and new conveyances issued to the extent, if any, that Great Plains owned a royalty interest in the described properties. See Global Fin. Servs., Inc. v. Duttenhefner, 1998 ND 53, ¶ 19, 575 N.W.2d 667, 671 ("The Court has often said an assignee acquires no greater rights than those of the assignor, and simply stands in the shoes of the assignor.").
>
> The Court makes no finding as to the duration of the royalty interests the Trustee sought to convey to ESCO because the parties did not offer evidence sufficient to decide this issue.

Doc. 50, at 40–41.

3

In their Motion to Clarify and Amend Judgment, ESCO and Basin argue that the Court should amend its Judgment to remove the reference to specific wells, thereby granting them a broader royalty interest than articulated in the Court's Memorandum and Order and Judgment. Great Plains opposes the motion, arguing that a clarification is not needed, the amendments would create ambiguity, ESCO and Basin offer expert testimony not received at trial in support of the proposed amendments and the amendments are inconsistent with the Court's findings.

## III. LEGAL DISCUSSION

### A. RULE 59(e) STANDARD

"[T]he bankruptcy court has broad discretion in determining whether to grant a motion to alter or amend judgment . . . ." Crystalin, LLC v. Selma Props., Inc. (In re Crystalin, LLC), 293 B.R. 455, 465 (B.A.P. 8th Cir. 2003). Further, "Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" Holder v. United States, 721 F.3d 979, 986 (8th Cir. 2013) (quoting United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." Id. (quoting Innovative Home Health Care v. P.T.-O.T. Assoc. of Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998)). Finally, Rule 59(e) is "not designed to provide an avenue for a disappointed party to relitigate a matter previously decided by the court." Kruse v. Murray (In re Murray), 408 B.R. 268, 274 (Bankr. W.D. Mo. 2009).

4

**B. MERITS OF THE MOTION**

In their supporting brief, ESCO and Basin assert that the Court's Judgment is ambiguous because it names specific wellbores and describes real property in which ESCO and Basin hold a royalty interest. ESCO and Basin contend that the Trustee intended to convey a royalty interest in the entire real property described in the Judgment, and that the royalty should not be limited to production from a specific well. Great Plains resists, arguing the Judgment is not ambiguous and that the Judgment properly limits the royalty to production from a specific wellbore.

Throughout this litigation, the parties identified the 7/160 Interest as an undivided 7/160 interest in the oil, gas, and other minerals in and under the NW/4 of Section 8, Township 159 North, Range 94 West, Burke County, North Dakota. The part of the Inventory referring to the 7/160 Interest lists a property description of "NW1/4 of Section 8, Township 159 N, Range 94W," and references "North Tioga Field" and "Melvin E. Peterson." Exs. EB–201 and D–101, at 3. The Notice of Bankruptcy Sale also references "Melvin E. Peterson," "North Tioga Field (Madison Unit)," and lists a property description substantially similar to the description listed in the Inventory. Exs. EB–203 and D–102, at 2. Finally, the attachment to the Trustee's Assignment references "Melvin E. Peterson," "North Tioga Field (Madison Unit)" and contains a property description substantially similar to the description in the Inventory and Notice of Bankruptcy Sale. Exs. EB–226 and D–117, at 2.

According to Great Plains' expert witness, Gary Preszler, Exhibit 159 (a map received as a demonstrative exhibit during his testimony about the 7/160 Interest) shows that the "Melvin E Peterson" well is located within the property description

5

included in the Inventory, Notice of Bankruptcy Sale and the Assignment.  Exhibit 159 also demonstrates that another well, the "Melvin E. Peterson #2A," is located on the same tract of land described in the Inventory, Notice of Bankruptcy Sale and Assignment.  The Melvin E. Peterson 2A Well was not listed in the Inventory, Notice of Bankruptcy Sale, the Trustee's Assignment or the Appraiser's Report.  ESCO and Basin did not offer evidence disputing these facts.

Preszler also testified that the decimal figure included in the Inventory (.005469) referenced the royalty Great Plains received from the Mevin E. Peterson Well production.  ESCO and Basin agreed with this proposition as well as the calculation.[1]

In addition to the royalty interests referenced in the Inventory, Notice of Bankruptcy Sale and Assignment, the Appraisers' Report supports the proposition that the Trustee intended to transfer only a fractional royalty interest in the oil and gas produced from a specific well and not the net mineral acres.  See Ex. EB–202, at 6; Doc. 50 at 35.

Accordingly, the Court declared that "the Trustee intended to convey royalty interests in these properties."  Doc. 50, at 41.  Consistent with the evidence Great Plains offered, including Preszler's testimony, the Inventory heading "Net Interest in Production," the decimal figure which was consistent with the royalty interest in production from the Mevin E. Peterson Well, and other evidence received at trial, the Court concluded that the Trustee transferred a royalty interest in minerals produced

---

[1] ESCO and Basin concede that .005469 is the royalty interest Great Plains received from the Melvin E. Peterson well.  Specifically, they state: "the inventory described the 7/160 Interest with a reference to . . . the royalty Great Plains received form the Melvin E. Peterson's production—.005469 (1/8*7/160=.005469)." Doc. 47, at 5.

6

from the Melvin E. Peterson Well.  To the extent that the Court did not clearly qualify its conclusion by referring to "production from" the Melvin E. Peterson Well, it does so now.

Similarly, throughout this litigation, the parties described the 31% Interest as an undivided 31% interest in the oil, gas and other minerals in and under the S/2 and S/2NE/4 of Section 34, Township 164 North, Range 92 West, Burke County, North Dakota.  The Inventory lists a property description of "S1/2; S1/2NE1/4 of Section 34, Township 164N, Range 92 W" and references "Portal field" and "Ruppert" for the 31% Interest.  EB–201 and D–101, at 3.  The Notice of Bankruptcy Sale also references "Ruppert–Portal Field," and lists a property description substantially similar to the description listed in the Inventory.  EB–203 and D–102, at 2.  Finally, the attachment to the Trustee's Assignment references "Ruppert – Portal Field" and contains a property description substantially similar to the description in the Inventory and Notice of Bankruptcy Sale.  Exs. EB–226 and D–117, at 2.

Preszler testified that Exhibit 160 (a map received as a demonstrative exhibit during his testimony about the 31% Interest) shows that "Ruppert" is a well located within the property description included in the Inventory, Notice of Bankruptcy Sale and the Trustee's Assignment.  Exhibit 160 also demonstrates that another well, the "John Ruppert #1," is located on the same tract of land described in the Inventory, Notice of Bankruptcy Sale and the Assignment, but is not listed on the Inventory, Notice of Bankruptcy Sale and Assignment.  The fractional royalty interest transferred in the assignment (.03875) was based on a total of 49.6 net acres, which would have only included the Ruppert 1 Well.  Further, the John Ruppert #1 Well was not mentioned in the Appraisers' Report.  ESCO and Basin did not offer evidence disputing these facts.

7

Accordingly, the Court declared that "the Trustee intended to convey royalty interests in these properties." Doc. 50, at 41. Consistent with the evidence Great Plains offered, including Preszler's testimony, the Inventory heading "Net Interest in Production," the decimal figure which was consistent with the royalty interest in production from the Ruppert 1 Well, and other evidence received at trial, the Court concluded that the Trustee transferred a royalty interest in minerals produced from the Ruppert 1 Well. To the extent that the Court did not clearly qualify its conclusion by referring to "production from" the Ruppert 1 Well, it does so now.

With their motion to clarify and amend, ESCO and Basin seek to relitigate issues already decided by the Court in its Memorandum and Order. See Doc. 50. Rather than simply request the Court to clarify whether its Order and Judgment refer to production from a specific wellbore, ESCO and Basin advance a series of arguments not previously articulated to bolster their claim that the Trustee intended to transfer a royalty interest in the entire tracts of land described in the Judgment as opposed to production from individual wells. Their arguments, new information and analogies are untimely.

At trial, Great Plains argued that the 7/160 Interest and the 31% Interest were limited to royalty interests in production from single wells. Citing Preszler's testimony and other evidence, Great Plains asserted: "Atkinson clearly offered for sale and conveyed only a personal property share of production in the Melvin E. Peterson No. 1 well." Doc. 46, at 16. It also argued: "Clearly Atkinson only offered for sale and conveyed only a personal property share of production in the Ruppert No. 1 well." Id. at 17. Thus, ESCO and Basin knew Great Plains' position was that the Trustee's conveyance was limited to a share of production in the specifically named wells, yet

8

ESCO and Basin failed to address these arguments in any detail in their first post-trial brief or their reply brief. Their argument is limited to the following:

> But even if the Court disagrees with Defendants' position, the trustee at least conveyed a perpetual royalty interest in the entire property identified in the Assignment. There is nothing in the assignment that would limit the duration of any royalty conveyed or restrict it to a particular well. The assignment describes the property *and* the well separately, and the property descriptions are not limited to the spacing units for the described wells. The only possible conclusion is that the trustee at least intended to convey a royalty of perpetual duration in all of the described lands.

Doc. 47, at 12.

> Both produced minerals (e.g. oil in a tank) and a royalty interest in produced minerals are personal property interests. Minerals in the ground and royalty interest in minerals in the ground are both real property interests.

Doc. 49, at 9.

In their briefs in support of their motion, ESCO and Basin include new information and analogies expanding upon these arguments. For example, they note that "Royalties are interests in real property, not a single well bore," (Doc. 56, at 1), and then add pages of argument, analogies and information regarding post-bankruptcy drilling and extraction and the calculation of royalties.

Although their brief in support of their motion and reply brief include other information and examples that would have been helpful to the Court, the time for advancing these arguments passed on November 14, 2014, when the final post-trial response briefs were due. For this reason alone, their arguments must be rejected.

In addition, the Court notes that while ESCO and Basin's assertion that royalties are interests in real property may be correct, they also asserted that one may own a "royalty interest in produced minerals." See id. Based on evidence received at trial, the

9

Court concluded that the Trustee assigned a royalty interest in production from the Melvin E. Peterson 1 Well and the Ruppert 1 Well. ESCO and Basin did not offer evidence at trial showing that the Trustee intended to transfer more than an interest in production from the Melvin E. Peterson 1 and Ruppert 1 wells.

In their April 2015 arguments, ESCO and Basin suggest that a transfer of an interest in the production from a single well was technically impossible or illogical. Yet, the briefs they filed before December 2014 repeatedly reference evidence received at trial in a manner consistent with the Court's conclusion that the Trustee intended to transfer an interest in production. For example, in their post-trial brief, ESCO and Basin explained that the Inventory described the 7/160 Interest and the 31% Interest with reference to the description of the acreage, "the name of the producing well, and the *royalty interest in the well provided by the applicable lease*." Doc. 47, at 5 (emphasis added). They also asserted that the Inventory described the 31% interest with a reference to the real property, "the name of the producing well on that acreage—the Ruppert—and the *royalty Great Plains received from the Ruppert well's production—.038750* [.]" Id. (emphasis added). Similarly, they stated that the Inventory described the 7/160 Interest with reference to real property, "the name of the producing well—the Melvin E. Peterson—and *the royalty Great Plains received from the Melvin E. Peterson's production—.005469* [.]" Id. (emphasis added). The Court's conclusion that the Trustee was aware that Great Plains owned royalty interests produced from specific wells (Melvin E. Peterson 1 and Ruppert 1) and not the net mineral acres is consistent with ESCO and Basin's references to this interest. The record contains no evidence the

10

Trustee was aware Great Plains owned or that he intended to transfer anything more than a royalty interest in the production from specifically named wells.

ESCO and Basin admit that Great Plains was receiving royalties from specific wells at the time of the Trustee's conveyance, and the Appraisers' Report, Inventory, Notice of Bankruptcy Sale and Assignment all referenced those specific wells by name. Nevertheless, ESCO and Basin assert it would not make sense for the Trustee to describe all of the property listed in the Assignment if he only intended to convey an interest in production from a single well.  This argument is, likewise, rejected for two reasons:  First, ESCO and Basin did not assert it before the deadline for submission of post-trial briefs.  Second, it does not address the evidence received at trial.  It is true that the legal descriptions of the real property are broader than necessary to describe a royalty interest in production from a single well, but this fact does not diminish the persuasiveness of the evidence showing that documents titled with the term "royalty" included the name of a specific wellbore and decimal figure reflecting well production. ESCO and Basin did not offer evidence disputing the information on which the Court relied.

Although the Court is not entirely convinced that its Order and Judgment are ambiguous, it will grant ESCO and Basin's request to clarify and amend its Judgment to add the words "production from" to the description of the 7/160 Interest and 31% Interest transferred by the Trustee as follows:

> <u>7/160 Interest</u>:  a .005469 royalty interest in <u>production from</u> the Melvin E. Peterson 1 Well in the North Tioga Field Madison Unit in the northwest quarter of Section 8, Township 159 North, Range 94 West, in Burke County, North Dakota.

<u>31% Interest</u>: a .03875 royalty interest in <u>production from</u> the Ruppert 1 Well in Portal Field in the south half and south half of the northeast quarter of Section 34, Township 164 North, Range 92 West, in Burke County, North Dakota.

ESCO and Basin's request to remove the references to specific wellbores is denied because their arguments in support of this request are outside the scope of Rule 59(e).  <u>See</u> <u>In re DEF Invs., Inc.</u>, 186 B.R. 671, 681 (Bankr. D. Minn. 1995) ("Attempts to take a second bite at the apple or pad the record for purposes of appeal (especially when new legal theories or issues are not previously argued, but subsequently come to the mind of the losing party) are thus beyond the intended scope of Rules 59 and 60.").

The Court considered all other arguments and deems them to be without merit.

**IV.   CONCLUSION**

For the reasons included above, Defendants ESCO and Basin's Motion to Clarify and Amend Judgment is GRANTED IN PART AND DENIED IN PART.

Dated this 19th day of May, 2015.

*/s/ Shon Hastings*

**SHON HASTINGS, JUDGE**
**UNITED STATES BANKRUPTCY COURT**